LeslieAnn Haacke - 012734
lhaacke@jsslaw.com
Scott W. Hulbert - 021830
shulbert@jsslaw.com
Magill E. Weber - 023876
mweber@jsslaw.com
**JENNINGS, STROUSS & SALMON, P.L.C.**
A Professional Limited Liability Company
The Collier Center, 11ᵗʰ Floor
201 East Washington Street
Phoenix, Arizona 85004-2385
Telephone: (602) 262-5911
MinuteEntries@jsslaw.com

*Attorneys for Plaintiff Aggregate
Products, Co.*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Aggregate Products, Co.,** an Arizona corporation, | No. |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| **Wilbur-Ellis Company,** a California corporation; **Tanita Produce Company, Inc.,** an Arizona corporation; **Western Stucco Products Co., Inc.,** an Arizona corporation; **Stucco Investments, Inc.,** an Arizona corporation; and **Syngenta Crop Protection, Inc.,** a Delaware corporation, | **Jury Trial Requested** |
| Defendants. | |

## PLAINTIFF'S ORIGINAL COMPLAINT

For its Complaint, Aggregate Products, Co. ("Aggregate"), alleges as follows:

### PARTIES

1.      Plaintiff is a duly organized Arizona corporation that is now and at all material times has been properly authorized to transact business in the State of

3061375_1.DOC(58344.2)

1   Arizona, and in fact has been doing business in Maricopa County, Arizona.

2       2.     Defendant Wilbur-Ellis Company ("Wilbur-Ellis") is a California

3   corporation, which has owned property and conducted business in Arizona, and is

4   registered to conduct business in Arizona.

5       3.     Defendant Tanita Produce Company, Inc. ("Tanita Produce"), is an

6   Arizona corporation.

7       4.     Defendant Western Stucco Products Co., Inc. ("Western Stucco"), is an

8   Arizona corporation, upon information and belief formerly operating as an Arizona

9   corporation under the name Fiberglas Fabricators, Inc.

10       5.     Defendant Stucco Investments, Inc. ("Stucco"), is an Arizona

11   corporation, upon information and belief formerly operating as an Arizona

12   corporation under the names Western Stucco Products Co., Inc. and Arizona Pest

13   Control Company, Inc.

14       6.     Syngenta Crop Protection, Inc. ("Syngenta Crop Protection"), is a

15   Delaware corporation, which is registered to conduct business in Arizona. Upon

16   information and belief, Syngenta Crop Protection was formally operating and

17   registered to do business in Arizona under the name Stauffer Chemical Co., Inc.

18   ("Stauffer"), also a Delaware Corporation.

19   **JURISDICTION AND VENUE**

20       7.     This Court has jurisdiction over the questions presented and the parties

21   pursuant to the Comprehensive Environmental Response, Compensation and

22   Liability Act, 42 U.S.C. § 9601, *et seq.* ("CERCLA"), and 28 U.S.C. § 1331.

23   Specifically, this Court has jurisdiction under CERCLA pursuant to 42 U.S.C. §

24   9659(b)(1). This Court has jurisdiction of claims brought under the Resource

25   Conservation and Recovery Act ("RCRA") pursuant to § 7002(a) thereof, 42 U.S.C.

26   § 6972(a) and 28 U.S.C. § 1331. This Court has supplemental jurisdiction over

1 | Plaintiff's state law claims under 28 U.S.C. § 1367.

2 |     8.    Defendants are residents of the State of Arizona, licensed to do

3 | business in the State of Arizona, authorized to do business in the State of Arizona,

4 | current or former real property owners in Arizona, and/or have caused acts or events

5 | to occur which are the subject of Plaintiff's Complaint in the State of Arizona, thus

6 | providing this Court with personal jurisdiction over Defendants.

7 |     9.    The events or omissions giving rise to the claim occurred in whole, or

8 | in substantial part, in Glendale, Arizona, in the District in which this Court is located.

9 | Accordingly, venue is proper pursuant to 28 U.S.C. § 1391(b)(2), 42 U.S.C. §

10 | 9659(b)(1), and 42 U.S.C. § 6972(a).

11 | **FACTUAL BACKGROUND**

12 |     10.    Aggregate is the current owner of real property located at 5420 West

13 | Bethany Home Road, Glendale, Maricopa County, Arizona, as identified by the

14 | Maricopa County Recorder's Office as Parcels 14614005 and 14614004 ("the

15 | Property").

16 |     11.    Aggregate purchased the Property from the Kiyoshi Tanita, Makoto

17 | Tanita, and Susumu Tanita Family Trusts in 1987, after these Trusts acquired the

18 | Property from Tanita Farms, Inc. in 1984, and prior to the 1986 corporate dissolution

19 | of Tanita Farms, Inc.

20 |     12.    Tanita Produce is an active Arizona corporation incorporated in 1988

21 | which, upon information and belief, was doing business as Tanita Farms, Inc., prior

22 | to 1988.

23 |     13.    Upon information and belief, Tanita Farms, Inc., began agricultural

24 | produce distribution operations on the Property on or around July 19, 1972, under a

25 | sub-lease from lessee Wright Building & Investment Co., an Arizona corporation,

26 | which was an agent of then-owner Bean & Co., an Arizona corporation. On or about

October 19, 1972, Tanita Farms, Inc., acquired the Property from Wright Building & Investment Co.  Upon information and belief, Wright Building & Investment Co. and Bean & Co., both now dissolved Arizona corporations, were engaged in real estate sales and land development during 1972, and served as real estate brokers or pass-through entities between Tanita Farms, Inc., and prior owners of the Property.

14.    Prior to 1972, Wilbur-Ellis, a California corporation (currently registered in Arizona as an active foreign corporation with the Arizona Corporation Commission), was the owner and operator of the Property.

15.    Aggregate has continuously owned and operated the Property as a sand and gravel operation since purchasing it from the Kiyoshi Tanita, Makoto Tanita, and Susumu Tanita Family Trusts in 1987.

16.    Recently, in the course of Aggregate's due diligence associated with the sale of the Property, environmental site assessments were performed by the environmental consulting firm Professional Service Industries, Inc. ("PSI").

17.    A Phase I Environmental Site Assessment Report, dated January 17, 2007, and a subsequent Phase II Environmental Site Assessment Report, dated January 18, 2007, prepared by PSI ("the PSI Environmental Reports") contain the results of such environmental site assessments.

18.    The PSI Environmental Reports indicate that the Property has elevated levels of Toxaphene, Aldrin, Dieldrin, Endrin, Hexachlorobenzene, Heptachlor, DDE, DDT, and Endosulfran which are above the residential threshhold standards published by the Arizona Department of Environmental Quality ("ADEQ").

19.    First American Title Insurance Company performed a chain of title search at the Maricopa County Recorder's Office for the Property and adjacent parcels on February 7, 2007 ("Chain of Title Search").

20.    The Chain of Title Search indicates that a grant of deed for the Property

1   to Wilbur-Ellis was recorded on June 30, 1959. The Chain of Title Search also

2   indicates a Warranty Deed from Wilbur-Ellis to a third-party grantee recorded on

3   July 19, 1972.

4      21.   Historic city directories for the City of Glendale, Arizona, list Wilbur-

5   Ellis as the occupant of the Property during the time period from 1957 until 1973.

6      22.   Wilbur-Ellis owned and/or operated the Property from at least 1957

7   until at least 1972, and its ownership and/or operation included, but was not limited

8   to, the handling, receiving, manufacture, storage, packaging, re-packaging,

9   distribution, disposal, release, transport and sale of agricultural pesticides and

10  herbicides.

11     23.   During its ownership and/or operation of the Property, Wilbur-Ellis

12  engaged in the handling, receiving, manufacture, storage, packaging, re-packaging,

13  distribution, disposal, release, transport and sale of agricultural pesticides including

14  one or more of the following compounds: Toxaphene, Aldrin, Dieldrin, Endrin,

15  Hexachlorobenzene, Heptachlor, DDE, DDT and Endosulfran.

16     24.   During Aggregate's ownership and operation of the Property, it has

17  never engaged in the handling, receiving, manufacture, storage, packaging, re-

18  packaging, distribution, disposal, release, arrangement, sale, or transport of the

19  compounds Toxaphene, Aldrin, Dieldrin, Endrin, Hexachlorobenzene, Heptachlor,

20  DDE, DDT, and Endosulfran. As such, Aggregate is not responsible for the release

21  or disposal of the compounds Toxaphene, Aldrin, Dieldrin, Endrin,

22  Hexachlorobenzene, Heptachlor, DDE, DDT and Endosulfran on the Property.

23     25.   From the time Aggregate acquired the Property in 1987 until such time

24  as environmental site assessments were performed in connection with the sale of the

25  Property, Aggregate did not know nor did it have any reason to know that any

26  hazardous substances or wastes were present at the Property.

26.     The Property is abutted to the north by real property located at 6042 North 53rd Avenue, Glendale, Maricopa County, Arizona, as identified by the Maricopa County Recorder's Office as Parcels 146140011 and 146140012 (the "Adjacent Property").

27.     Upon information and belief, the Adjacent Property is currently owned and operated by Western Stucco Products Co., Inc., and/or Stucco Investments, Inc., Arizona corporations.  Upon information and belief, the entity now known as Stucco Investments, Inc., and/or formerly known as Western Stucco Products Co., Inc., was, prior to a 1978 name change, known as Arizona Pest Control Co., Inc., an Arizona corporation.

28.     Arizona Pest Control Co., Inc., (now known as Stucco Investments Inc., and upon information and belief, doing business as Western Stucco Products Co., Inc.) owned and operated an insecticide mill, defallant plant, and liquid fertilizer plant on or around the Adjacent Property now identified as Parcels 146140011 and 146140012 between about 1957 until 1978, at which time, the corporate entity name changed to Western Stucco Products Co., Inc.

29.     Arizona Pest Control Co., Inc. (now known as Stucco Investments Inc., and upon information and belief doing business as Western Stucco Products Co., Inc.) and/or its related entity(ies) owned and/or operated an insecticide mill, defallant plant, and/or liquid fertilizer plant, where such ownership and/or operation specifically included the handling, manufacture, storage, packaging, re-packaging, distribution, disposal, release, arrangement, receipt, or transport of agricultural pesticides, including one or more of the compounds Toxaphene, Aldrin, Dieldrin, Endrin, Hexachlorobenzene, Heptachlor, DDE, DDT and Endosulfan.

30.     Historic City of Glendale directories list Stauffer Chemical Co., Inc., as operating a facility on or around the Adjacent Property identified as Parcels

146140011 and 146140012 as early as the 1950s and at least until the early 1970s.

31.     Following a series of corporate mergers and name changes, as reflected by the public records of the Arizona Corporation Commission, the entity formerly known as Stauffer Chemical Co., Inc., as a predecessor entity of current successor Syngenta Crop Protection, Inc., also a Delaware corporation, which is registered to do business in Arizona as a foreign corporation with the Arizona Corporation Commission.

32.     Stauffer Chemical Co., Inc. (now known as Syngenta Crop Protection, Inc.) and/or its related entity(ies) owned, operated, and/or arranged for use of an insecticide mill, defallant plant, and/or liquid fertilizer plant on or around the Adjacent Property now identified as Parcels 146140011 and 146140012, and upon information and belief, in the course of such ownership, operations, and/or arrangement, Stauffer either independently, or by arrangement or contract with others, supplied, shipped, handled, received, manufactured, stored, packaged, re-packaged, distributed, disposed, released, and/or transported agricultural pesticides, including one or more of the compounds Toxaphene, Aldrin, Dieldrin, Endrin, Hexachlorobenzene, Heptachlor, DDE, DDT and Endosulfan.

33.     Upon information and belief, Stauffer Chemical Co., Inc., and/or its related entity(ies) (now known as Syngenta Crop Protection, Inc.), may have operated concurrently with Arizona Pest Control Co., Inc., or under some other contractual or corporate affiliation between the parties, in the operations of an insecticide mill, defallant plant, and/or liquid fertilizer plant on or around the Adjacent Property now identified as Parcels 146140011 and 146140012 during the time period beginning in approximately 1950 through the 1970s.

34.     Due to the actions or inactions of the owners and operators of the Adjacent Property now identified as Parcels 146140011 and 146140012, one or more

of the compounds Toxaphene, Aldrin, Dieldrin, Endrin, Hexachlorobenzene, Heptachlor, DDE, DDT and Endosulfan are migrating and have migrated onto the Property.

35.     Toxaphene, Aldrin, Dieldrin, Endrin, Hexachlorobenzene, Heptachlor, DDE, DDT, and Endosulfan are "hazardous substances" under CERCLA, 42 U.S.C. § 9601(14). *See* 40 C.F.R. § 302.4 and Table 302.4.

36.     The emission, leaking, spilling, pumping, pouring, emptying, discharging, inspecting, injecting, escaping, leaching, dumping, and/or disposal of such hazardous substances onto and around the Property and/or Adjacent Property constitutes a "release" of hazardous substances within the meaning of CERCLA, 42 U.S.C. § 9601(22).

37.     The Property and the Adjacent Property, or portions thereof, are "facilities" under CERCLA, 42 U.S.C. § 9601(9).

38.     Defendants are "persons" as defined under CERCLA, 42 U.S.C. § 9601(21).

39.     Defendants are responsible parties under 42 U.S.C. § 9607(a), as they are past or present owners or operators of the Property or the Adjacent Property.

40.     Toxaphene, Aldrin, Dieldrin, Endrin, Hexachlorobenzene, Heptachlor, DDE, DDT and Endosulfan were found on the Property as a result of an environmental investigation.  The presence of such substances was reported to the ADEQ and the United States Environmental Protection Agency ("EPA").  Upon information and belief, the EPA and ADEQ have not commenced any action or investigation under any federal or state environmental statute.

41.     Pursuant to RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B), hazardous waste, including discarded Toxaphene, Aldrin, Dieldrin, Endrin, Hexachlorobenzene, Heptachlor, DDE, DDT and Endosulfan, disposed on the

Property and Adjacent Property constitute an imminent and substantial endangerment to health and the environment in violation of RCRA § 7002(a)(1)(B).

42.   Pursuant to RCRA § 7002, 42 U.S.C. § 6972, Defendants disposed of hazardous waste including discarded Toxaphene, Aldrin, Dieldrin, Endrin, Hexachlorobenzene, Heptachlor, DDE, DDT and Endosulfan, on the Property and Adjacent Property without a permit, in violation of RCRA § 3005, 42 U.S.C. § 6925.

43.   Plaintiff has incurred and will continue to incur substantial costs associated with the response to the disposal of Toxaphene, Aldrin, Dieldrin, Endrin, Hexachlorobenzene, Heptachlor, DDE, DDT and Endosulfan on the Property, including, but not limited to, costs for analysis of soil, air, solid materials, and improvements, interpreting the analysis, legal costs, public notice costs, reporting costs, planning remediation, actual cleanup costs, and other activities related to and made necessary by the presence of such hazardous substances and/or wastes on the Property.

44.   Plaintiff has incurred and paid necessary response costs consistent with the National Contingency Plan in the course of investigating the contamination on the Property pursuant to 42 U.S.C. §§ 9601 (31) and 9607(a)(4)(B).

45.   In addition to the out-of-pocket costs, Plaintiff has incurred and will continue to incur substantial economic losses, including but not limited to, diminution in value, lost profits, and the costs and losses associated with the potential lost sale of the Property.

## FIRST CLAIM FOR RELIEF

### CERCLA § 107(a) RESPONSE COSTS
### (All Defendants)

46.   Paragraphs 1 through 45 as alleged are incorporated and realleged as though fully set forth herein.

47.     Pursuant to CERCLA § 107(a), 42 U.S.C. § 9607(a), any person may seek reimbursement of its costs to investigate, remove, and/or remediate the release of hazardous substances from any other person who is liable for the release of hazardous substances under CERCLA § 107(a).

48.     Pursuant to CERCLA §§ 107(a)(1) and (a)(4)(B), 42 U.S.C. §§ 9607(a)(1) and (a)(4)(B), Defendants are liable to the Plaintiff for all necessary response costs incurred and to be incurred by Plaintiff as a result of the release of hazardous substances on the Property.

49.     CERCLA §§ 107(a)(2) and (a)(4)(B), 42 U.S.C. §§ 9607(a)(2) and (a)(4)(B), provide that any person who, at the time of disposal of any hazardous substance, owned or operated any facility at which such hazardous substances were disposed of and released or threatened to be released is liable for all necessary costs of response caused by such release and incurred by any other person consistent with the National Contingency Plan.

50.     The disposal and/or release of hazardous substances by Defendants during their ownership and/or operation of the Property and Adjacent Property have caused, and continue to cause, the Plaintiff to incur "response" costs within the meaning of CERCLA § 101(25), 42 U.S.C. § 9601(25), including investigation, monitoring and clean-up costs.

51.     Such response costs incurred to date by the Plaintiff were and are necessary and consistent with the National Contingency Plan pursuant to CERCLA § 105, 42 U.S.C. § 9605, and 40 C.F.R. Part 300.

52.     Defendants were and/or are "owners and operators" of the Property and the Adjacent Property from which there has been and continues to be a release or threatened release of hazardous substances within the meaning of CERCLA § 107(a)(l), 42 U.S.C. § 9607(a)(l), and Defendants are liable for all necessary costs of

response caused by such release and incurred by the Plaintiff consistent with the National Contingency Plan.

53.     Pursuant to CERCLA § 107(a), 42 U.S.C. § 9607(a), Defendants are liable to Plaintiff for all response costs incurred and to be incurred by the Plaintiff as a result of the release of hazardous substances by Defendants during the terms of Defendants' occupancy of the Property and Adjacent Property.

54.     Pursuant to CERCLA § 107(a), 42 U.S.C. § 9607(a), Plaintiff has an implied right to contribution from the Defendants.

WHEREFORE, the Plaintiff prays that this Court enter judgment against Defendants for response costs and/or contribution permitted under CERCLA, the costs of this action, and any other or further relief this Court deems equitable and just.

## SECOND CLAIM FOR RELIEF

### RCRA § 7002
### (All Defendants)

55.     Paragraphs 1 through 54 as alleged are incorporated and realleged as though fully set forth herein.

56.     RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B), provides that any person may commence a civil action against any person, including a past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.

57.     Defendants are past and present owners and/or operators of the Property and Adjacent Property and have contributed to the past and present handling, storage, transportation, and disposal of solid and hazardous waste at the sites.

58.    The hazardous waste, including discarded Toxaphene, Aldrin, Dieldrin, Endrin, Hexachlorobenzene, Heptachlor, DDE, DDT and Endosulfan, may present an imminent and substantial endangerment to health or the environment.

59.    Defendants have violated RCRA §§ 3005 and 7002(a)(1)(B), 42 U.S.C. §§ 6925 and 6972(a)(1)(B), because the hazardous waste contamination disposed on the Property and Adjacent Property presents an imminent and substantial endangerment to the health or the environment.

WHEREFORE, the Plaintiff prays that this Court enter judgment enjoining the Defendants to remove and properly dispose of the hazardous waste they have disposed of on the Property and Adjacent Property and the hazardous waste which has migrated to adjoining properties, and to permanently remediate the Property affected by the hazardous waste stored and/or disposed of at the site, and order Defendants to pay appropriate civil penalties for disposal of hazardous waste on the Property and Adjacent Property without a permit pursuant to RCRA §§ 3005 and 7002(a), 42 U.S.C. §§ 6925 and 6972(a).

## THIRD CLAIM FOR RELIEF

## DECLARATORY JUDGMENT
### (All Defendants)

60.    Paragraphs 1 through 59 as alleged are incorporated and realleged as though fully set forth herein.

61.    Pursuant to Fed. R. Civ. P. Rule 57, 28 U.S.C §§ 2201, 2202, CERCLA § 107(a) [42 U.S.C. § 9607(a)], and RCRA §§ 3005 and 7002(a) [42 U.S.C. §§ 6925 and 6972], Plaintiff is entitled to declaratory judgment on Defendants' liability arising from the release of hazardous substances and wastes at the Property.

62.    Defendants, in contravention of RCRA §§ 3005 and 7002(a), 42 U.S.C. §§ 6925 and 6972(a), by or through their agents, employees, managers, directors, or any other personnel acting at the behest of Defendants, by virtue of a contract or

1  agreement, have contributed to the improper past and present handling, storage,

2  transportation, arrangement, and disposal of hazardous waste on the Property and

3  Adjacent Property.

4      63.   Defendants, in contravention of CERCLA § 107(a), 42 U.S.C. §

5  9607(a), by or through their agents, employees, managers, directors, or any other

6  personnel acting at the behest of Defendants, by virtue of a contract or agreement,

7  contaminated or polluted the Property by spilling, releasing, threatening releases, or

8  otherwise improperly handling hazardous substances.

9      WHEREFORE, the Plaintiff prays that this Court declare that it is entitled to a

10  declaration of its rights, the enforcement of the applicable environmental standards, a

11  declaration of costs and damages for remediation and monitoring, and the repayment

12  of attorneys' fees and costs incurred in connection with this suit against the

13  Defendants, and any other relief the Court deems equitable and just. Likewise, the

14  Plaintiff prays that the Court issue a declaratory judgment that Defendants have

15  violated, and continue to be in violation of RCRA §§ 3005, 7002(a) and CERCLA §

16  107(a).

17              **FORTH CLAIM FOR RELIEF**

18                  **NUISANCE**

19        **(Defendants Wilbur-Ellis and Tanita Produce)**

20      64.   Paragraphs 1 through 63 as alleged are incorporated and realleged as

21  though fully set forth herein.

22      65.   Defendants' unreasonable, unwarranted, careless, intentional, and/or

23  reckless use of the Property constitutes a material and foreseeable invasion of the

24  Plaintiff's use and enjoyment of the Property.

25      66.   Defendants' activities and operations on and at the Property resulted in

26  the substantial release and discharge of hazardous substances which remain in and on

the Property.

67.    This invasion of the Property by Defendants has caused and continues to cause Plaintiff substantial damage, and it continues to interfere with the reasonable use and enjoyment of the Property by the Plaintiff.

68.    Defendants are liable to the Plaintiff for all damages caused by Defendants' invasion of the Property.

WHEREFORE, the Plaintiff prays that this Court enter judgment against Defendants finding that their prior actions and inactions at the Property constitute a nuisance and award the Plaintiff compensatory damages, punitive damages, and all costs and attorneys' fees.

### FIFTH CLAIM FOR RELIEF

### TRESPASS
### (Defendants Wilbur-Ellis and Tanita Produce)

69.    Paragraphs 1 through 68 as alleged are incorporated and realleged as though fully set forth herein.

70.    The unreasonable, unwarranted, careless, intentional, and/or reckless release of hazardous substances by the Defendants at or onto the Property constitutes a physical invasion of the Property and the Plaintiff's exclusive possession thereof.

71.    As a direct and proximate result of the acts and/or omissions of Defendants, the Property has been physically invaded by the release of hazardous substances and waste.

72.    This invasion of the Property has been wrongfully caused by the Defendants.

WHEREFORE, the Plaintiff prays that this Court enter judgment against the Defendants and award Plaintiff compensatory damages, punitive damages, and all costs and attorneys' fees.

**SIXTH CLAIM FOR RELIEF**

**NEGLIGENCE**
**(Defendants Wilbur-Ellis and Tanita Produce)**

73.   Paragraphs 1 through 72 as alleged are incorporated and realleged as though fully set forth herein.

74.   During Defendants' ownership of the Property and thereafter, Defendants owed a duty to not cause and/or allow the contamination of the Property with hazardous substances to occur or remain.

75.   Notwithstanding this aforementioned duty and the breach thereof, Defendants, by and through their agents and/or employees, negligently, carelessly, and improperly caused or allowed contaminants to be released onto the Property.

76.   Notwithstanding this aforementioned duty and the breach thereof, Defendants, by and through their agents and/or employees, negligently, carelessly, and improperly allowed the released contaminants to remain on the Property.

77.   As a direct and proximate result of Defendants' breach of their duty to act reasonably with respect to the Property, Plaintiff has sustained substantial damages.

WHEREFORE, the Plaintiff prays that this Court enter judgment against Defendants and award the Plaintiff compensatory damages together with all attorneys' fee and costs.

**SEVENTH CLAIM FOR RELIEF**

**NUISANCE**
**(Defendants Syngenta Crop Protection, Stucco and Western Stucco)**

78.   Paragraphs 1 through 77 as alleged are incorporated and realleged as though fully set forth herein.

79.   Defendants' unreasonable, unwarranted, careless, intentional, and/or reckless use of the Adjacent Property constitutes a material and foreseeable invasion

of the Plaintiff's use and enjoyment of the Property.

80.     Defendants' activities and operations on and at the Adjacent Property resulted in the substantial release and discharge of hazardous substances which remain in and at the Property.

81.     This invasion of the Property by Defendants has caused and continues to cause Plaintiff substantial damage and it continues to interfere with the reasonable use and enjoyment of the Property by the Plaintiff.

82.     Defendants are liable to the Plaintiff for all damages caused by Defendants' invasion of the Property.

WHEREFORE, the Plaintiff prays that this Court enter judgment against Defendants finding that their prior actions on the Adjacent Property constitute a nuisance and award the Plaintiff compensatory damages, punitive damages, and all costs and attorneys' fees.

## EIGHTH CLAIM FOR RELIEF

### TRESPASS
**(Defendants Syngenta Crop Protection, Stucco and Western Stucco)**

83.     Paragraphs 1 through 82 as alleged are incorporated and realleged as though fully set forth herein.

84.     The unreasonable, unwarranted, careless, intentional, and/or reckless release of hazardous substances by Defendants at or onto the Adjacent Property constitutes a physical invasion of the Property and the Plaintiff's exclusive possession thereof.

85.     As a direct and proximate result of the acts and/or omissions of Defendants, the Property has been physically invaded by the release of hazardous substances and waste.

86.     This invasion of the Property has been wrongfully caused by Defendants.

WHEREFORE, the Plaintiff prays that this Court enter judgment against Defendants and award Plaintiff compensatory damages, punitive damages, and all costs and attorneys' fees.

## NINTH CLAIM FOR RELIEF

### NEGLIGENCE

**(Defendants Syngenta Crop Protection, Stucco and Western Stucco)**

87.     Paragraphs 1 through 86 as alleged are incorporated and realleged as though fully set forth herein.

88.     During Defendants' ownership of the Adjacent Property and thereafter, Defendants owed a duty not to cause and/or allow the contamination of the Property with hazardous substances to occur or remain.

89.     Notwithstanding this aforementioned duty and the breach thereof, Defendants, by and through their agents and/or employees, negligently, carelessly, and improperly caused or allowed contaminants to be released onto the Adjacent Property, which then migrated onto the Property.

90.     Notwithstanding this aforementioned duty and the breach thereof, Defendants, by and through their agents and/or employees, negligently, carelessly, and improperly allowed the released contaminants to remain on the Property.

91.     As a direct and proximate result of Defendants' breach of their duty to act reasonably with respect to the Property and Adjacent Property, Plaintiff has sustained substantial damages.

WHEREFORE, the Plaintiff prays that this Court enter judgment against the Defendants and award the Plaintiff compensatory damages together with all attorneys' fees and costs.

## TENTH CLAIM FOR RELIEF

### NEGLIGENCE PER SE
### (All Defendants)

92.     Paragraphs 1 through 91 as alleged are incorporated and realleged as though fully set forth herein.

93.     The United States of America, and the various states, municipalities and counties within it, have promulgated and/or adopted various statutes, ordinances, rules and/or regulations governing hazardous substances and waste, including CERCLA and RCRA, to protect the health, safety, and welfare of the citizens of the United States.

94.     Defendants have a duty to comply with the aforementioned statutes, ordinances, rules, and/or regulations.

95.     Upon information and belief, Defendants violated one or more of the aforementioned statutes, ordinances, rules and/or regulations governing hazardous substances and hazardous waste.

96.     As a direct and proximate result of the foregoing acts and omissions of the Defendants, Plaintiff has incurred damages in an amount to be proven at the time of trial.

WHEREFORE, the Plaintiff prays that this Court enter judgment against Defendants and award Plaintiff compensatory damages, punitive damages, and all costs and attorneys' fees.

## ELEVENTH CLAIM FOR RELIEF

### CONTRIBUTION
### (All Defendants)

97.     Paragraphs 1 through 96 as alleged are incorporated and realleged as though fully set forth herein.

98.     Defendants' unreasonable, unwarranted, careless, intentional, and/or reckless use of the Property and/or the Adjacent Property has caused one or more of the compounds Toxaphene, Aldrin, Dieldrin, Endrin, Hexachlorobenzene, Heptachlor, DDE, DDT and Endosulfan to be released and, in turn, contaminate the Property.

99.     As a result of Defendants' contamination of the Property, Plaintiff has incurred and will continue to incur substantial costs associated with the response to the release of Toxaphene, Aldrin, Dieldrin, Endrin, Hexachlorobenzene, Heptachlor, DDE, DDT and Endosulfan on the Property.

100.    Plaintiff is not in any way responsible for the release of Toxaphene, Aldrin, Dieldrin, Endrin, Hexachlorobenzene, Heptachlor, DDE, DDT and Endosulfan on the Property or Adjacent Property.

101.    As the current owner of the Property, Plaintiff is potentially liable for the release of Toxaphene, Aldrin, Dieldrin, Endrin, Hexachlorobenzene, Heptachlor, DDE, DDT and Endosulfan on the Property, which it did not cause.

102.    Plaintiff is entitled to contribution from the Defendants for their respective share as a result of Plaintiff incurring and continuing to incur, in whole, substantial costs associated with the response to the release of Toxaphene, Aldrin, Dieldrin, Endrin, Hexachlorobenzene, Heptachlor, DDE, DDT and Endosulfan on the Property, in amounts disproportionate to Plaintiff's liability.

103.    The principles of equity establish that Plaintiff is entitled to contribution from the Defendants to assist in the fair and just division of loss caused by Defendants' release of Toxaphene, Aldrin, Dieldrin, Endrin, Hexachlorobenzene, Heptachlor, DDE, DDT and Endosulfan on the Property.

WHEREFORE, the Plaintiff prays that this Court enter judgment against the Defendants and award the Plaintiff compensable damages together with all attorneys'

1 | fees and costs.

## TWELFTH CLAIM FOR RELIEF

### INDEMNIFICATION
### (All Defendants)

104. Paragraphs 1 through 103 as alleged are incorporated and realleged as though fully set forth herein.

105. Defendants' unreasonable, unwarranted, careless, intentional, and/or reckless use of the Property and/or the Adjacent Property has caused one or more of the compounds Toxaphene, Aldrin, Dieldrin, Endrin, Hexachlorobenzene, Heptachlor, DDE, DDT and Endosulfan to be released and, in turn, contaminate the Property.

106. As a result of Defendants' contamination of the Property, Plaintiff has incurred and will continue to incur substantial costs associated with the response to the release of Toxaphene, Aldrin, Dieldrin, Endrin, Hexachlorobenzene, Heptachlor, DDE, DDT and Endosulfan on the Property.

107. Plaintiff is not responsible for the release of Toxaphene, Aldrin, Dieldrin, Endrin, Hexachlorobenzene, Heptachlor, DDE, DDT and Endosulfan on the Property and/or Adjacent Property.

108. While incurring substantial costs associated with the response to the release of Toxaphene, Aldrin, Dieldrin, Endrin, Hexachlorobenzene, Heptachlor, DDE, DDT and Endosulfan on the Property, Plaintiff has been forced to discharge a liability, which Defendants rightfully should assume.

109. As the current owner of the Property, Plaintiff is potentially liable for the release of Toxaphene, Aldrin, Dieldrin, Endrin, Hexachlorobenzene, Heptachlor, DDE, DDT and Endosulfan on the Property, which it did not cause.

110. As between the Plaintiff and the Defendants, the liability for responding to the release of Toxaphene, Aldrin, Dieldrin, Endrin,

Hexachlorobenzene, Heptachlor, DDE, DDT and Endosulfan on the Property ought to be discharged by the Defendants.

WHEREFORE, the Plaintiff prays that this Court enter judgment against the Defendants and award the Plaintiff compensable damages together with all attorneys' fees and costs.

### THIRTEENTH CLAIM FOR RELIEF

### RESTITUTION
**(All Defendants)**

111.   Paragraphs 1 through 110 as alleged are incorporated and realleged as though fully set forth herein.

112.   Defendants' unreasonable, unwarranted, careless, intentional, and/or reckless use of the Property and/or the Adjacent Property has caused one or more of the compounds Toxaphene, Aldrin, Dieldrin, Endrin, Hexachlorobenzene, Heptachlor, DDE, DDT and Endosulfan to be released and in turn contaminate the Property.

113.   As a result of Defendants' contamination of the Property, Plaintiff has incurred and will continue to incur substantial costs associated with the response to the release of Toxaphene, Aldrin, Dieldrin, Endrin, Hexachlorobenzene, Heptachlor, DDE, DDT and Endosulfan on the Property.

114.   Plaintiff is not responsible for the release of Toxaphene, Aldrin, Dieldrin, Endrin, Hexachlorobenzene, Heptachlor, DDE, DDT and Endosulfan on the Property and/or Adjacent Property.

115.   Plaintiff has been unjustly forced to incur costs in responding to the release of Toxaphene, Aldrin, Dieldrin, Endrin, Hexachlorobenzene, Heptachlor, DDE, DDT and Endosulfan on the Property and will continue to do so in the future.

116.   A duty is imposed on the Defendants by the principles of equity to prevent the injustice experienced by the Plaintiff incurring and continuing to incur substantial costs associated with the response to the release of Toxaphene, Aldrin, Dieldrin, Endrin, Hexachlorobenzene, Heptachlor, DDE, DDT and Endosulfan on the Property.

117.   Justice, morals, equity, and good conscience demand that Defendants restore Plaintiff to the position it formerly maintained prior to incurring response costs associated with the release of Toxaphene, Aldrin, Dieldrin, Endrin, Hexachlorobenzene, Heptachlor, DDE, DDT and Endosulfan by the Defendants on the Property.

WHEREFORE, the Plaintiff prays that this Court enter judgment against the Defendants and award the Plaintiff restitution together with all attorneys' fees and costs.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff prays for Judgment against Defendants and each of them as follows:

a.   For declaratory relief as set forth above;

b.   For direct consequential, incidental, and punitive damages in an amount to be proven at trial;

c.   For injunctive relief as set forth above;

d.   For contribution, indemnification, and restitution as set forth above;

e.   For Plaintiff's court costs;

f.   For Plaintiff's attorneys' fees pursuant to applicable statutory and common law principles; and

1      g.    For such other and further relief as the Court deems just and proper.

2    DATED this 13th day of April, 2007.

3                     JENNINGS, STROUSS & SALMON, P.L.C.

By _____
           LeslieAnn Haacke
           Scott W. Hulbert
           Magill E. Weber
           201 East Washington Street, 11th Floor
           Phoenix, AZ  85004-2385
           *Attorneys for Plaintiff*